545 So.2d 268 (1988)
Joaquin FUSTER, Appellant,
v.
EASTERN AIRLINES, INC. and the Travelers Insurance Co., Appellees.
No. 87-571.
District Court of Appeal of Florida, First District.
December 13, 1988.
Rehearing Denied July 19, 1989.
Edward Schroll, Miami, for appellant.
*269 H. George Kagan and Shirley A. Visnoski, of Miller, Hodges, Kagan & Chait, P.A., Deerfield Beach, for appellees.
JOANOS, Judge.
Joaquin Fuster appealed from the second of two orders issued by the deputy commissioner, in which wage-loss benefits were denied in a worker's compensation proceeding. He raised the following two issues: (1) Whether there is competent substantial evidence to support the deputy's finding that claimant suffered no permanent physical impairment as a result of the accident on December 22, 1981; and (2) Whether the deputy commissioner abused his discretion in rejecting unrefuted medical evidence that claimant's last accident of December 27, 1983, resulted in permanent impairment. Eastern Airlines Inc., and the Travelers Insurance Company, the employer and carrier, cross appealed, challenging the deputy's first order and raised these points: (1) Whether the deputy commissioner erred in finding the statute of limitations was not a bar to a claim filed more than two years after the 1981 accident resulting in injury; and (2) Whether the deputy commissioner's finding that claimant suffered a compensable injury on December 27, 1983, and provided timely notice thereof to his employer, was supported by competent substantial evidence. On direct appeal, we affirm the deputy's last order in part and reverse in part. On cross-appeal, we affirm on both issues.
Claimant, a 47 year old ex-pilot, was employed with Eastern Airlines from July 1972 until April 1984. During this period of employment, claimant sustained three separate back injuries which culminated in the denial of an airman medical certificate due to sciatica and herniation of an intervertebral disc. Claimant's first back injury occurred on December 2, 1975, when the employer was insured by American Motorist Insurance Company. Claim for benefits for this accident was filed on October 12, 1984, and the employer and carrier as to that accident raised the statute of limitations as a defense to the claim. The deputy found that the two year statute of limitations was a bar to that claim because more than two years had passed without receipt of medical care or compensation.[1] The order denying that claim was not challenged on appeal.
On December 22, 1981, claimant sustained another back injury during the course of his employment, and he saw the employer's physician, Dr. Millett. Dr. Millett permitted claimant to fly with a back brace. Claimant continued to fly for the *270 employer for the next two years at full pay. The deputy determined that the employer knew of claimant's "continued disability" resulting from his accident of December 22, 1981, and that the employer made an exception for this claimant and permitted him to fly at full pay with continued use of the back brace. The employer did not deny notice or liability, except as to timeliness. The deputy found that the use of the prescribed back brace, provided by the employer, served as the continued furnishing of medical care and compensability in regard to the December 22, 1981, back injury, for as long as the practice continued. Further, the deputy found the statute of limitations was not a bar to the claim filed on October 12, 1984.
Claimant also claimed that he injured his back again on December 27, 1983. The employer and its carrier have maintained that claimant did not sustain an accident on that date, and that no notice of such accident was furnished to the employer. Captain Stacey, claimant's supervisor, could not recall the accident or what occurred thereafter. However, based upon testimony of claimant, the deputy found that on December 27, 1983, claimant was on the first day of a three day trip for the employer and that this accident did occur. It was further found that the employer was notified of the accident and a replacement requested. Therefore, the deputy concluded that as a result of this accident, claimant's "pain and disability increased" and that claimant continued to fly only because he could not be immediately replaced. Upon being replaced, claimant stated that he went back to Miami and immediately reported to the employer's medical department. However, the medical department records do not contain any information specifically regarding claimant's alleged accident of December 27, 1983.
In reviewing both the employer's medical department records and the testimony of claimant, the deputy accepted the testimony of the claimant and found that the medical department records were incomplete and could not be relied upon for accuracy. The deputy found that it was not credible that this large employer would have no record of replacing the claimant in the midst of a regularly scheduled flight, as had occurred. Therefore the deputy accepted the testimony of claimant regarding the events of December 27, 1983, and thereafter. In his first order dated April 2, 1986, the deputy found that the December 22, 1981, and the December 27, 1983, accidents were compensable, and retained jurisdiction for the purpose of determining causal relationship between said accidents and claimant's entitlement to benefits resulting therefrom.
After the above interlocutory order, claimant provided proof on the remaining issues dealing with causal relationship and disability benefits allegedly due because of the accidents of December 22, 1981, and December 27, 1983. In his second order, the deputy found that following the accident of December 22, 1981, when claimant aggravated his preexisting back condition, he was grounded by the employer's medical department physician, Dr. Millett, and remained unable to fly until January 11, 1982. The deputy found that by January 11, 1982, claimant was asymptomatic and returned to regular work. Further, the deputy found claimant totally disabled as a result of his December 1981 accident, from December 23, 1981, to January 12, 1982.
As to the December 27, 1983, incident, the first doctor to see claimant following the accident was Dr. Serrano, who saw claimant two days later. The deputy noted that the accident was not mentioned by claimant and all references to the back problem were to the 1975 accident. The doctor told him not to work and that was the last time the doctor saw claimant. The next doctor to see claimant was Dr. Charles Dalbey, an orthopedic surgeon. Dr. Dalbey treated claimant on at least six different occasions and opined that claimant had reached MMI on January 31, 1985. The claimant declined the surgery that Dr. Dalbey recommended. The deputy found that Dr. Dalbey had done all that was medically possible to remedy claimant's condition, short of surgery. Dr. Dalbey found a 5 to 6 percent permanent impairment rating of the whole body. The deputy further found *271 that at no time did Dr. Dalbey attribute claimant's condition either to the accident occurring in 1981 or the accident occurring in 1983.
Claimant saw Dr. Boyd on November 19, 1984. Dr. Boyd opined that all three accidents contributed to the back problem. But the deputy found that Dr. Boyd is not an expert in the field of orthopedics. Further, because Dr. Boyd saw claimant so remote in time from the accidents themselves, and was unfamiliar with AMA physical impairment ratings, the deputy rejected Dr. Boyd's testimony.
Michael Abramson, an orthopedic surgeon, first saw claimant on December 15, 1985, and opined that claimant's back problems stem from a chronic type of disc disease. He was unable to opine as to whether the 1981 or 1983 accident caused any additional injury. After reviewing all of the doctors' testimony, the deputy found that the accident of December 22, 1981, resulted in an aggravation of the underlying back disease, that claimant was unable to fly beginning December 28, 1983, and was totally disabled from that date to January 31, 1985. The deputy based this finding in part upon claimant's testimony, and on the testimony of Dr. Serrano and Dr. Dalbey. Based on the opinion of Dr. Millett, the deputy found claimant suffered no permanent impairment attributable to the accident of December 22, 1981.
The deputy also concluded that claimant failed to produce proof sufficient to convince him that the accident of December 27, 1983, resulted in any permanent impairment. The deputy found that claimant was not permanently and totally disabled and was able to do some type of light work although he could not return to his profession as a pilot. The deputy ordered the employer and carrier, Travelers Insurance Company, to pay temporary total disability (TTD) from December 23, 1981, to January 12, 1982, at the compensation rate of $228, with interest. He ordered TTD to be paid from December 27, 1983, to January 31, 1985, at a compensation rate of $271 per week, with interest.
We find that as to issue one, there was sufficient competent substantial evidence to support the finding, and affirm. Appellees argue correctly that Dr. Millett, the director and head doctor of the employer's clinic, was the only treating physician after claimant's December 1981 accident. He diagnosed claimant as having a chronic degenerative disc disease. In regard to the back sprain from claimant's fall, he testified that there was no resulting permanent impairment, and that claimant recovered from this injury and was asymptomatic. Further, he found that claimant could return to flying full time if he wore a back brace for support when needed.
Claimant himself testified that he returned to work full time asymptomatic after his recovery from the 1981 back sprain. Claimant was paid full wages once he resumed flying after the 1981 injury. As appellees contend, claimant testified that he only wore the back brace when he was hurting, and that if he felt good he wouldn't wear it. Based on the testimony of Dr. Millet and claimant, the deputy denied wage loss benefits following the 1981 accident, finding that claimant suffered no permanent impairment from this accident. The testimony of both Dr. Millett and claimant constitutes the competent substantial evidence necessary to support the deputy's factual findings.
We do not agree with appellant's argument that Dr. Millett's testimony and records should be discredited with respect to this issue. In his first order the deputy did find that Dr. Millett misrepresented the extent of the medical records he held on claimant, when responding to a private insurance company's request for the records. However, we agree with appellees that this finding is irrelevant to the permanent impairment question here, especially in light of claimant's own testimony. Further, appellant has not pointed to any specific evidence to support his allegation that he did suffer permanent impairment from this injury.
As to issue two, we reverse the deputy's finding that the 1983 accident resulted in no permanent impairment. This court has *272 held that when permanent impairment cannot reasonably be determined under the AMA guidelines, it may be established under other generally accepted medical criteria for determining impairment. Rodriguez v. Dade County School Board, 511 So.2d 712 (Fla. 1st DCA 1987); Patterson v. Wellcraft Marine, 509 So.2d 1195 (Fla. 1st DCA 1987); Consoweld Distributors v. Slaughter, 502 So.2d 503 (Fla. 1st DCA 1987); Trindade v. Abbey Road Beef'N Booze, 443 So.2d 1007 (Fla. 1st DCA 1983).
The deputy correctly summarized Dr. Boyd's testimony regarding percent of permanent impairment. Dr. Boyd is claimant's family physician. He is a general practitioner who is not familiar with the AMA guides for permanent impairment ratings. Therefore, he could not answer the question asked of him as to what permanent impairment he felt claimant suffered as a result of his injuries. He only responded in broad descriptive terms, i.e., claimant is totally disabled as a pilot, and is limited in standard activities, such as sitting and lifting. However, Dr. Boyd did opine, based on reasonable medical probability, that claimant would have to undergo surgery to alleviate the pain due to his permanent impairment. Dr. Boyd stated that he felt claimant suffered from a certain percentage of permanent impairment, and estimated it to be between moderate and severe, because he could not place an AMA percentage figure on it. Dr. Boyd testified that each fall contributed to claimant's symptoms and inability to pilot, but that the aggravation could not be apportioned by accident because the x-rays evidenced previous injury. We find that the deputy's wholesale rejection of Dr. Boyd's testimony with respect to the permanent impairment issue is unreasonable, in light of the obvious impaired condition claimant suffered after the December 1983 accident.
Appellees correctly summarize Dr. Abramson's testimony, where he concludes that, although he assesses a 30-35 percent permanent impairment of the spine, he cannot determine how much, if any, was contributed by the 1983 accident. He stated that he did not examine claimant at the time of the December 1983 injury, and had no idea if this accident caused additional injury. He further stated that it would be impossible to separate the aggravations to appellant's chronic back problem. Further, claimant did not report the 1983 accident to him, and he had no record of it. Yet as claimant argues, Dr. Abramson also opined that the 30-35 percent permanent impairment was related to the accident occurring on December 1983, as a subsequent aggravation.
Dr. Dalbey saw claimant February 17, 1984, almost two months after his December 1983, accident. He stated that he has reference in his notes to claimant's severe episode in December 1983, but his office notes do not reflect the detailed causal history for this severe episode. He found claimant to have a marked narrowing of the disc space, disc disease and a bone spur. He diagnosed him as having a slipped disc, and sciatica with a bulging disc. He opined that the disc disease and sciatica preexisted the 1981 accident. He determined that claimant was not fit to pilot. He further testified that claimant was permanently physically impaired 5-6 percent of the whole person according to the AMA guides and his experience. Dr. Dalbey admitted that "the guidelines are quite limited in evaluating a situation like this." After being given the hypothetical of claimant's accident history, Dr. Dalbey stated that, "I would relate his symptoms from February 1984, to present as directly related to the injuries that occurred during his employment ..." However, he also opined that he could not state with reasonable medical probability that the accident(s) played a role in claimant's condition. He concluded claimant reached MMI on January 31, 1985. His final assessment of claimant, after the last examination on April 14, 1986, was that claimant could not sit for more than thirty minutes without a change in position, and he could not sit for more than four hours over an 8 hour period. Further, he could not lift over twenty pounds, and was cautioned not to stoop, bend, crawl, push or pull. Nor could he work at heights, because of the sudden onsets of pain. Within these limitations, *273 Dr. Dalbey felt claimant was employable. This is the opinion upon which the deputy relies to deny claimant wage loss benefits. We find this conclusion unsupported by the evidence.
We find competent substantial evidence in the record to support the deputy's conclusion that, although claimant was temporarily totally disabled as a result of his December 1981, accident until January 12, 1982, due to a lumbrosacral sprain, he suffered no permanent impairment and returned to work. However, based on the medical testimony recited above, we find that the deputy erred in concluding that claimant suffered no permanent impairment following his 1983 accident. Further, after the December 1983 accident, it is undisputed that claimant was determined to be totally disabled with respect to his employment, had reached MMI, and was denied certification to fly.
Section 440.02(16), Florida Statutes, provides: "Permanent Impairment means any anatomic or functional abnormality or loss, existing after the date of maximum medical improvement, which results from the injury." Claimant testified that at the time of the hearing he had not held another job, in spite of the assistance of a recruiting job placement officer, Mr. Cohen. Mr. Cohen testified that, although claimant is well educated, his physical limitations in sitting and standing are considered burdensome by potential employers. Also, claimant would be unreliable because of the muscle spasms that put him out of commission for two to six days at a time. And claimant must have certain breaks to stretch his legs out. Mr. Cohen stated that "all employers, to my knowledge, can't deal with that situation." (Mr. Cohen searched for a job for claimant somewhere in his field  aerospace community, high-tech engineering and airplane service companies, but found claimant totally disabled with respect to these areas.) Although, absent medical evidence of permanent impairment, a vocational rehabilitation specialist's testimony is insufficient to establish permanent impairment, Dimirra Development, Inc. v. Mills, 501 So.2d 63 (Fla. 1st DCA 1987), here there is medical evidence that claimant suffers permanent impairment, and the job placement officer's testimony supports claimant's position.
We agree with appellant that the deputy erred in denying claimant wage loss after the December 1983, accident on grounds that claimant did not prove he was "permanently impaired" according to the AMA guidelines as a result of his December 1983 accident. After reviewing all of the testimony, and comparing claimant's health status before and after the December 1983 injury, we find the deputy's conclusion, that claimant suffered no permanent impairment from that accident, not supported by competent substantial evidence. There was no medical opinion in the record that suggests that claimant's condition is not at least partially related to the December 23, 1983, accident.
Also, where claimant was diagnosed as suffering from lumbar back strain, a soft tissue injury, as a result of his accident, the AMA guides have no applicability. See Patterson v. Wellcraft Marine, 509 So.2d 1195, 1197 (Fla. 1st DCA 1987), and cases cited therein. However, claimant's disc problems are covered by the AMA guides. Id.
In summary, we reverse on this second point and remand so that the deputy may, by using acceptable standards where the AMA guides do not apply, determine the extent of claimant's impairment and assess claimant's entitlement to wage loss after his December 1983 injury and orthopedic MMI.
On cross appeal, as to the 1981 injury, we affirm the deputy's finding that claimant was not barred by the statute of limitations. There is competent substantial evidence to support the deputy's finding that claimant's employer and immediate supervisor, Captain Stacey, was well aware that claimant was wearing a back brace while he continued to fly, following the 1981 injury. Captain Stacey testified that claimant was his copilot and he saw claimant wearing the back brace, but that claimant appeared not to be disabled, and flew the plane well. Also, Dr. Millett, who was *274 the head physician at the Eastern Airline Medical Clinic, knew claimant was flying with a brace, for he prescribed it.
Section 440.13(2)(a) Florida Statutes, provides that an employer shall furnish to the employee such medically necessary remedial treatment ... including durable medical equipment and medically necessary apparatus. In this instance, the "remedial treatment" took the form of a back brace, which claimant wore as needed until his 1983 injury. This court has recently held in City of Orlando v. Blackburn, 519 So.2d 1017 (Fla. 1st DCA 1987), that, where claimant did not even see a doctor for two years, the pain pills prescribed constituted palliative care, and such care was remedial within the meaning of the statute of limitations. This court declined to interpret "remedial" to exclude treatment which mitigates the conditions or effects of the injury. The back brace, a medical apparatus, was prescribed to alleviate pain, and is not the "home treatment" which failed to qualify as remedial treatment in Gonzalez v. Allure Shoe Corporation, 160 So.2d 703 (Fla. 1964). We find that there is both competent substantial evidence and case law to support the deputy's finding that the wearing of the prescribed back brace constituted remedial treatment which tolled the statute of limitations, making claimant's filing for benefits timely with respect to his 1981 injury.
As for appellees' second point on cross appeal, we affirm the deputy's finding that claimant suffered an injury in December 1983. Captain Stacey's testimony did not provide support for or against claimant's position. He could not recall that claimant fell, but had not reviewed the log where he would have made entries about the incident.
Dr. Boyd testified that claimant had given him the history of his December 22, 1983, injury. Also, there are several medical documents in the record which refer to claimant suffering from muscle spasm while working on a trip in December 1983, or suffering from a "severe episode," including references in Dr. Dalbey's and Dr. Guido's medical notes.
Claimant testified in detail about his slip while exiting the plane, and how he tried to have another pilot replace him on the flight. Although appellees argue that claimant is fabricating this accident, there was no evidence to conclusively establish their theory. We cannot say that the deputy erred in finding claimant's testimony credible on this point.
Finally, because of the evidence, appellees' additional argument that claimant failed to give timely notice of the 1983 accident to his employer, is without merit. Therefore, we affirm as to the cross-appeal and affirm the deputy's last order as to issue one, but reverse and remand as to issue two for proceedings consistent with this opinion.
ERVIN and NIMMONS, JJ., concur.
NOTES
[1] Section 440.19, Florida Statutes, provides in pertinent part:

440.19 Time and procedure for filing claims. 
(1)(a) The right to compensation for disability, rehabilitation, impairment, or wage loss under this chapter shall be barred unless a claim therefor which meets the requirements of paragraph (d) is filed within 2 years after the time of injury, except that, if payment of compensation has been made or remedial treatment or rehabilitation services have been furnished by the employer on account of such injury, a claim may be filed within 2 years after the date of the last payment of compensation or after the date of the last remedial treatment or rehabilitative services furnished by the employer.
(b) All rights for remedial attention under this section shall be barred unless a claim therefor which meets the requirements of paragraph (d) is filed with the division within 2 years after the time of injury, except that, if payment of compensation has been made or remedial attention or rehabilitative services have been furnished by the employer without an award on account of such injury, a claim may be filed within 2 years after the date of the last payment of compensation or within 2 years after the date of the last remedial attention or rehabilitative services furnished by the employer; and all rights for remedial attention or rehabilitative services under this section pursuant to the terms of an award shall be barred unless a further claim therefor is filed with the division within 2 years after the entry of such award, except that, if payment of compensation has been made or remedial attention or rehabilitative services have been furnished by the employer under the terms of the award, a further claim may be filed within 2 years after the date of the last payment of compensation or within 2 years after the date of the last remedial attention or rehabilitative services furnished by the employer. However, no statute of limitations shall apply to the right for remedial attention relating to the insertion or attachment of a prosthetic device to any part of the body. Any claim for reimbursement by a provider of remedial attention shall be subject to the limitations of this paragraph.