929 So.2d 633 (2006)
Edward L. GINSBERG, Appellant,
v.
ChemMED CORP. d/b/a Roto Rooter Service Company, Payroll Transfers, Gallagher Bassett Services, Inc., and Crawford and Company, Appellees.
No. 1D05-3832.
District Court of Appeal of Florida, First District.
May 11, 2006.
*634 Ivan Matusek and Raymond Burger of Matusek, McKnight, Poluse & Cangro, P.A., St. Petersburg, for Appellant.
Robert C. Alston of Alston & Baker, P.A., Zephyrhills; Joseph A. Corsmeier of Joseph A. Corsmeier, P.A., Clearwater, for Appellees.
PER CURIAM.
Claimant appeals an order granting the employer/carrier's (E/C) motion for summary final order entered by the Judge of Compensation Claims (JCC), denying and dismissing all pending claims based on the running of the statute of limitations, section 440.19, Florida Statutes (1998). Claimant argues that the JCC erred by basing the date the statute began to run on the date claimant was prescribed pain medication as remedial treatment for his compensable injury, and instead should have used the date claimant finished the course of treatment by taking the last dose of the medication within the time prescribed. We agree, and therefore reverse. However, claimant's alternative ground for relief, that the E/C's authorization of evaluation and treatment with a pain management physician tolls the statute of limitations, does not warrant reversal in this case.

I. BACKGROUND
On October 15, 1998, claimant, a plumber, injured both knees while working in a trench. The E/C accepted the injury as compensable and provided compensation benefits, including medical treatment. On June 27, 2002, claimant was seen by his authorized orthopedic surgeon, Dr. Koco Eaton, who diagnosed claimant with "endstage arthritis left knee." Dr. Eaton's report from this visit provided that claimant's only treatment option would be total knee replacement, and pending that, pain management treatment. Dr. Eaton told claimant he could only write him one prescription for Oxycontin, a pain relief medication, and that he was being referred for pain management treatment until he decided to have the knee replacement surgery. The claimant was provided with a prescription for a thirty-day supply of Oxycontin, which was filled the same day. *635 The E/C paid for both the prescription and the doctor's visit.
On July 30, 2002, claimant filed a petition for authorization for pain management treatment. Shortly after this petition was filed, the E/C authorized evaluation and treatment with a pain management physician to be chosen by claimant from a carrier-approved list. In response, claimant voluntarily withdrew his petition. However, claimant did not seek treatment pursuant to this authorization until July 9, 2003.
On July 10, 2003, claimant called the E/C's adjuster and stated he wanted a return visit with Dr. Eaton. The adjuster denied the return visit indicating that the statute of limitations had run. On July 22, 2003, more than one year after the prescription was filled, but less than one year after the thirty-day supply of pain medication would have been depleted, claimant made a return visit to Dr. Eaton on his own. However, the E/C denied the bill for this visit based on the statute of limitations.
On February 25, 2004, within one year of claimant's second visit to Dr. Eaton's office, claimant filed a petition for benefits requesting medical expenses, medical care under the supervision of Dr. Eaton and a pain management physician, authorized and continuing treatment with Dr. Eaton and pain management treatment of both knees, and costs and attorney's fees. The E/C filed a motion for summary final order, alleging that the statute of limitations had run on the claim. The JCC granted this motion after rehearing, finding that the statute of limitations had run in this case. The order specifically found the following: "Case law substantiates that the time began to run from the physician's appointment, June 27, 2002, and not from some arbitrary point in the future when the Claimant asserts that he finished taking the prescription." The order denied and dismissed all pending claims regarding the 1998 accident.

II. ANALYSIS
Section 440.19(1), Florida Statutes (1998), provides a two-year statute of limitations for workers' compensation claims from the date the employee knew or should have known of an injury arising out of work performed in the scope and course of employment. This statute of limitations would bar the claims in the present case unless the statute was tolled pursuant to section 440.19(2), Florida Statutes (1998). This section provides the following:
Payment of any indemnity benefit or the furnishing of remedial treatment, care, or attendance pursuant to either a notice of injury or a petition for benefits shall toll the limitations period set forth above for 1 year from the date of such payment. This tolling period does not apply to the issues of compensability, date of maximum medical improvement, or permanent impairment.
§ 440.19(2), Fla. Stat. (1998) (emphasis added).

A. The Prescription Medication

Claimant argues that remedial treatment is furnished during the entire course of treatment, in this case, through the last dose of the medication taken by claimant at the end of the thirty-day prescription period. If this date is used to toll the statute of limitations as claimant suggests, then claimant's claims are not barred by the statute of limitations. Claimant made his second visit to Dr. Eaton within one year from the date claimant's prescription pain medication would have been depleted. Further, claimant's petition for benefits was filed within one year of this second visit to Dr. Eaton.
While several decisions of this court cite the date the prescription was received as *636 the date the statute of limitations begins to run, these cases do not address the narrow issue presented by claimant in this case. See Thomas v. Jacksonville Elec. Auth., 536 So.2d 310 (Fla. 1st DCA 1988) (holding that the prescribed medication in that case received on May 27, 1987, tolled the statute of limitations and therefore, the July 7, 1987 claim for benefits was timely filed); City of Orlando v. Blackburn, 519 So.2d 1017 (Fla. 1st DCA 1987) (holding that "remedial" as used in section 440.19 includes treatment that mitigates the effects of injury, such as pain medication, and that eleven prescriptions for pain medication ordered by the doctor without office visits tolled the statute of limitations so that claimant's claim, filed within one year of the last prescription, was not barred).
In the present case, there is no dispute that the E/C knew about this course of treatment, because the E/C paid for the prescription and the doctor's visit.[1] Additionally, because the E/C paid for the prescription, there is no question that the pain medication was prescribed for treatment of claimant's work-related injury. Dr. Eaton only prescribed a thirty-day supply of pain medication, and did not renew this prescription. Claimant argues that the statute of limitations should begin to run at the end of this thirty-day period.
Under the specific facts of this case, we agree with claimant, that the statute of limitations began to run at the end of this thirty-day period, so long as claimant was taking the medication as prescribed. Cf. Fuster v. E. Airlines, Inc., 545 So.2d 268 (Fla. 1st DCA 1988) (holding there was competent substantial evidence and case law to support the deputy's finding that the wearing of a back brace, prescribed to alleviate pain, constituted remedial treatment which tolled the statute of limitations, where it was clear that the employer knew about the treatment); Taylor v. Metro. Dade County, 596 So.2d 798 (Fla. 1st DCA 1992) (citing Fuster; reversing and remanding for findings of fact where the JCC found that the statute of limitations barred the claimant's claim, but did not address the claimant's testimony that a back brace had been prescribed and that the claimant wore the back brace off and on during the critical two-year time period). If claimant took the pain medication as prescribed by Dr. Eaton through the end of this thirty-day time period, then remedial treatment was furnished to claimant through the end of the prescribed period.

B. The E/C's Authorization of Treatment

As an alternative ground for reversal, claimant argues that the statute of limitations was tolled by the E/C's authorization of evaluation and treatment by a pain management physician. This offer of treatment occurred after claimant filed a petition for benefits on July 30, 2002, which was later voluntarily dismissed after treatment was agreed to by the E/C.
This argument does not provide an independent ground for reversal. The petition for benefits, although timely filed, does not toll the statute of limitations in *637 this case because it was voluntarily dismissed. See McBride v. Pratt & Whitney, 909 So.2d 386 (Fla. 1st DCA 2005) (holding that the running of the statute of limitations was not tolled during the period when two earlier petitions were filed by claimant and later voluntarily dismissed). Additionally, the authorization of treatment does not toll the statute of limitations because claimant does not allege he sought remedial treatment pursuant to this authorization within one year of claimant's June 27, 2002 appointment with Dr. Eaton. See Eagle Point Mobile Home Estates v. Smith, 475 So.2d 992 (Fla. 1st DCA 1985) (ruling that where the adjuster initially stated she "saw no problem" with requested surgery, the statute was not tolled where the E/C revoked the authorization prior to the time claimant received the surgery); Gen. Elec. Co. v. Shepard, 440 So.2d 462 (Fla. 1st DCA 1983) (providing that an outstanding order requiring treatment which has not been furnished will not toll the running of the statute of limitations).

Conclusion
Therefore, we reverse and remand for further proceedings. In order to determine when remedial treatment was "furnished" to claimant for purposes of tolling the statute of limitations, the JCC should make factual findings as to when claimant last took the medication as prescribed during the thirty-day period.
REVERSED and REMANDED with directions.
BENTON and POLSTON, JJ. CONCUR; THOMAS, J. CONCURS WITH OPINION.
THOMAS, J., specially concurring.
I concur because prior decisions constrain me from properly interpreting section 440.19(2), Florida Statutes (1998). See Fuster v. Eastern Airlines, Inc., 545 So.2d 268 (Fla. 1st DCA 1988); Taylor v. Metro. Dade County, 596 So.2d 798 (Fla. 1st DCA 1992). See generally, Lee v. City of Jacksonville, 616 So.2d 37, 39 (Fla.1993) ("In order for treatment to be `furnished by the employer,' the employer or carrier must have actual knowledge that the claimant is receiving remedial treatment.") In my view, the better rule and proper interpretation of the operative language would hold that the statute of limitations begins to run on the date that the drugs are prescribed, not on the date that a person consumes the last pill prescribed.
The operative language in section 440.19(2) initiates the statute of limitations with E/C's "furnishing of remedial treatment. . . ." I do not believe the language includes the time that a claimant consumes a prescription medicine which was previously provided to him by prescription. I believe that the correct interpretation of section 440.19(2) here would result in affirming the JCC's order, as the medicine was "furnished" when Dr. Eaton provided the prescription to Claimant.
To interpret section 440.19(2), as this court did in Fuster, requires extensive factual determinations that are problematic. Here, the statute of limitations, as interpreted, will either bar or allow the claim, based on the date that Claimant took the last Oxycontin pill. Claimant must testify to establish this date, but understandably, he may not be able to accurately recall when he took a pill during a month in 2002. It is equally unlikely that there will be any other witness who can testify that they observed Claimant take a pill on a date certain four years ago.
The result here is a perfect example of why a bright-line rule is preferable, especially where the plain language of the statute supports such a rule. The Florida *638 Supreme Court has held that bright-line rules are preferable when implementing statutes of limitations. See Silvestrone v. Edell, 721 So.2d 1173, 1176 (Fla.1998). In Silvestrone, the supreme court interpreted a professional malpractice statute of limitations to run from the date of final judgment. Id. at 1174. The court stated: "This bright-line rule will provide certainty and reduce litigation over when the statute starts to run. Without such a rule, the courts would be required to make a factual determination on a case by case basis . . . ." Id. at 1176. The supreme court's preference for a bright-line rule has been reaffirmed. Gilbride, Heller & Brown, P.A. v. Watkins, 783 So.2d 224, 226 (Fla.2001) ("This conclusion is consistent with the purposes of the bright-line rule announced in Silvestrone: to provide certainty and reduce litigation concerning when the statute starts to run.") See also, Steele v. Kehoe, 747 So.2d 931, 933 (Fla.1999) (requiring a convicted defendant to obtain postconviction relief before maintaining a malpractice action "provides a bright line for determining when the statute of limitations runs"). Similarly, parties in workers' compensation cases need certainty and a rule which reduces litigation.
Enforcing a statute of limitations on the kind of evaluations necessary here will not likely produce reliable factual determinations. The proper administration of justice, as well as the plain language of the statute, compels that courts should interpret the operative language to apply to the date the drug is prescribed, not the date the drug is consumed. This interpretation would establish a bright-line rule that is easily determined without the need for litigation and possibly unreliable factual determinations.
In the alternative, a better rule would simply require that the statute of limitations begins to run on the date the claimant fills the prescription, which also would constitute "furnishing" treatment. This rule would eliminate the need for litigation in most cases, as records would establish when a prescription was filled.
Because I am constrained by this court's prior decisions in Fuster and Taylor, I concur in the majority opinion.
NOTES
[1] Because knowledge of the treatment in this case is not at issue, we do not address whether the E/C must have actual knowledge that claimant is receiving remedial treatment in the form of prescription medication in order for the treatment to be furnished by the E/C. See Lee v. City of Jacksonville, 616 So.2d 37 (Fla.1993) (holding that, where the claimant was continuing to use a prescribed TENS unit to control pain two years after it was prescribed, "[i]n order for treatment to be `furnished by the employer,' the employer or carrier must have actual knowledge that the claimant is receiving remedial treatment"). But see Sol Dale Bldgs., Inc. v. Schweickert, 656 So.2d 606 (Fla. 1st DCA 1995) (providing that the holding of Lee only applies to a claimant's continuing use of medical devices).