929 So.2d 687 (2006)
CITY OF OCOEE and PGCS, Appellants,
v.
Dennis TRIMBLE, Appellee.
No. 1D04-4518.
District Court of Appeal of Florida, First District.
May 22, 2006.
*688 George A. Helm, III, Esquire, Lake Mary, for Appellants.
Kelli Biferie, Esquire, Winter Park, and Bill McCabe, Esquire, Longwood, for Appellee.
HAWKES, J.
We again confront the waiver provisions of section 440.20(4), Florida Statutes (2003). Here the employer and carrier (E/C) paid for a cardiac evaluation when Claimant complained of chest pressure and discomfort. After receiving the cardiologists's report, the E/C wrote Claimant and advised him that "no further medical treatment will be authorized for this date of injury." Over one year later, Claimant filed a Petition for Benefits (PFB) seeking benefits for hypertension. The Judge of Compensation Claims (JCC) concluded Claimant's hypertension was, by default, compensable, because the E/C failed to deny compensability within 120 days of providing the cardiac treatment. The E/C argues the JCC erred in this conclusion. We agree and reverse.

Facts and Procedural History
On August 8, 2002, Claimant was employed as a firefighter/engineer with the City of Ocoee. On that date, Claimant was on his way to a fire department related class, driving the fire truck, when he felt a slight pressure or pain in his chest. He obtained an evaluation by an advanced life support unit at the class location. The results of that evaluation failed to reveal any problem besides a low pulse rate. At the employer's request, Claimant subsequently presented to an emergency room, and was advised to stay over night in order to receive a stress test the next day. Claimant indicated an ability to obtain a stress test through his personal physician and, on that condition, avoided the overnight stay. The E/C paid for this medical treatment.
On October 10, 2002, within 120 days of the initial provision of treatment, the adjuster mailed Claimant a letter which stated:
This letter will serve to notify you that your treating cardiologist physician, Dr. *689 Einhorn, had released you as of 08/19/02 from a cardiac standpoint. He stated that you are an acceptable risk from a cardiac standpoint to return to work without restrictions. Therefore, no further medical treatment will be authorized for this date of injury.
Over one year later, on October 30, 2003, Claimant filed a PFB seeking benefits for hypertension. The E/C filed a formal notice of denial in response to this PFB on December 5, 2003.
Following a final hearing, the JCC found the October 10, 2002 letter failed to deny the claim, because Claimant did not understand the letter to be a denial of his claim, and the letter did not clearly and articulately convey that all aspects of the claim were denied. The JCC found the only denial to the claim was when the E/C filed their formal response to the PFB on December 5, 2003. Since December 5, 2003 was more than 120 days after the initial provision of the cardiac benefits, the JCC concluded the E/C waived the right to deny compensability pursuant to section 440.20(4), Florida Statutes. Since the E/C waived the right to deny compensability, the JCC erroneously concluded all benefits sought for hypertension must be provided.

Waiver of the Right to Deny Compensability Does Not Establish Entitlement to Any Benefits a Claimant May Seek
A distinction exists between the concept of compensability and a worker's entitlement to either compensation or benefits. See North River Ins. Co. v. Wuelling, 683 So.2d 1090 (Fla. 1st DCA 1996) (en banc); Checkers Rest. & Specialty Risk Servs., Inc. v. Wiethoff, 925 So.2d 348 (Fla. 1st DCA 2006) (en banc). An E/C who pays compensation or intentionally provides benefits,[1] but fails to deny compensability within 120 days waives its right to contest an injury "arose out of, and occurred within the course and scope of, the claimant's employment." North River, 683 So.2d at 1092; see also § 440.20(4), Fla. Stat. Thus, an E/C who does not deny compensability has not waived anything beyond the ability to contest that an injury "arose out of, and in the course of employment." See Checkers, at 349; see also § 440.02(19). For instance, the E/C has not waived the right to contest that the workplace injury is the major contributing cause of the condition for which treatment is sought, see Checkers, at 349-50, that the E/C has a defense to the claim, such as the statute of limitations, see North River, 683 So.2d at 1092, or that a claimant made a false, misleading, or incomplete statement, forfeiting any right to compensation under chapter 440. See Singletary v. Yoder's & Ameritrust Ins. Corp., 871 So.2d 289 (Fla. 1st DCA 2004).
Here, the JCC's conclusion as to the consequences of waiver would have far reaching negative implications. A couple of examples illustrate.
First, there would be an adverse impact on the Legislative intent that the workers' compensation system be efficient and self-executing, and not an economic or administrative burden. See § 440.015, Fla. Stat. Under the JCC's logic, an E/C providing treatment to an injured employee for a known and accepted condition, would incur the obligation to provide treatment for any other condition the claimant may suffer then, or in the future. The obligation is incurred without any consideration of the relationship between the contested condition and the accepted condition, or between *690 the workplace injury and the contested condition. This sanctions an E/C who accepts the responsibility for uncontested medical conditions that result from workplace injuries. Sanctions in this context would provide negative incentives for a self-executing system.
Second, a blurring of the distinction between the concepts of compensability and entitlement to benefits renders other important statutory provisions meaningless. For example, section 440.09(a), Florida Statutes, concerning subsequent injuries or conditions, and section 440.09(b), Florida Statutes, concerning preexisting conditions, both require the workplace injury remain the major contributing cause of the need for treatment before the E/C is obligated to provide the treatment. Under the logic here, an E/C providing treatment for the initial condition would become obligated to provide treatment for either a subsequent injury or preexisting condition without the requisite showing that the workplace injury is the major contributing cause of the need for treatment. A similar situation could result in occupational disease cases without disability, and mental or nervous disorders without physical injury.
Consequently, here, provision of a cardiac evaluation and the passage of 120 days cannot waive the E/C's ability to defend against a subsequent claim for hypertension, or any other condition, by arguing the workplace injury is not the major contributing cause of the hypertension, or the other contested condition. "[I]ssues concerning the worker's entitlement to benefits remain subject to challenge, including the extent of the compensable injury and the causal relationship between the compensable injury and the condition for which the worker seeks benefits." Checkers, at 349.

The Effectiveness of a Denial Avoiding Waiver Does Not Depend On A Claimant's Understanding
To avoid waiver of the right to deny compensability, the E/C is only required to deny the claim within 120 days of "the initial provision of compensation benefits." § 440.20(4), Florida Statutes. Once the statute is triggered, section 440.20(4), requires the E/C to "advise the employee of claim acceptance or denial." Id. In keeping with the self-executing goal of chapter 440, advising the employee of claim acceptance or denial does not require elaborate, formalistic procedures. Obviously, the continued provision of compensation or benefits past the 120 day limit advises the employee of "claim acceptance" and waives the right to later deny compensability. See Travelers Ins. Co. v. Collins, 825 So.2d 451 (Fla. 1st DCA 2002).
Similarly, to "advise the employee of claim ... denial," does not require a formalistic process, nor does the statute require "magic words" to convey the denial. Just as the actions of the E/C can advise of claim acceptance, the actions of the E/C may advise of claim denial. The determination of whether a claim has been denied can never depend on a claimant's ability to understand that the E/C is denying the claim. Substantive rights in the workers' compensation context cannot depend on the claimant's ability to understand or the claimant's intelligence. If this were so, we would not have a uniform workers' compensation system, but a system that varied from claimant to claimant, providing benefits based on what each claimant understood, or the intelligence of each claimant.
Here, the E/C, although not statutorily required, sent Claimant a letter advising of claim denial. The letter stated Claimant was released to return to work without restrictions, and "no further medical treatment *691 will be authorized for this date of injury." The logical import of this letter can be only one of two alternatives. Either: (1) Claimant was not injured; or, (2) if he was, it was not a workplace injury for which the E/C is responsible. Either alternative results in denial of the claim.
Because the JCC misconstrues the consequences of an E/C's waiver of the right to deny compensability, and bases the effectiveness of a denial on Claimant's ability to understand his claim was denied, the JCC's order is REVERSED.
THOMAS, J., concurs; KAHN, C.J., concurs with Opinion.
KAHN, C.J., concurring.
I agree with much of Judge Hawkes' analysis. In particular, I find the Judge of Compensation Claims' order must be reversed because the employer/carrier initially provided treatment, but thereafter, obtained a medical opinion that further treatment would not be work-related. Accordingly, I conclude that this case does not involve an attempt by an employer/carrier to improperly deny a claim ab initio, after having provided benefits without denial for more than 120 days. I therefore concur in result.
NOTES
[1] The statute is not applied in a mechanical, simplistic manner. Paying by mistake, a bill submitted by an unauthorized provider does not trigger the 120 day period and would not result in waiver. See Cole v. Fairfield Cmtys., 908 So.2d 1105 (Fla. 1st DCA 2005).