IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

BEVERLY MATHIS,

   Appellant,

v.

BROWARD COUNTY SCHOOL
BOARD and THE SCHOOL
BOARD OF BROWARD
COUNTY,

   Appellees.

_____/

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D16-3286

Opinion filed August 14, 2017.

An appeal from an order of Judge of Compensation Claims.
Iliana Forte, Judge.
Date of Accident: March 2, 2015.

Kimberly A. Hill of Kimberly A. Hill, P.L., Fort Lauderdale, for Appellant.

Kimberly J. Fernandes of Kelley Kronenberg, P.A., Tallahassee, for Appellees.


KELSEY, J.

   Claimant's foot injury was determined to be non-compensable because she

failed to meet her burden of proving that the injury occurred in the course and scope

of employment or arose out of her employment. She does not appeal that ruling.

Rather, she argues that the Employer/Carrier (E/C) were obligated to pay for her

hospitalization that occurred before the E/C denied compensability and after the E/C

began providing benefits under the 120-day rule of section 440.20(4), Florida Statutes (2014). The E/C argue that they were not responsible for the hospitalization expenses because they had decided to deny compensability before the hospitalization occurred, even though they did not file a notice of denial until the hospitalization ended. The JCC accepted the E/C's argument, but we reverse on that issue. However, because the hospitalization began and was completed in a span of less than 10 days, and the E/C did not expressly authorize the hospitalization or fail to respond timely to a written request for authorization, we remand for the JCC to address the E/C's defenses and to determine whether the hospitalization was for emergency care within the meaning of the governing statutes.

### Background Facts.

The background facts are not in dispute. Claimant, a custodian who is diabetic, reported to her Employer on March 5, 2015, that a nail or tack went through her right shoe the previous evening, and that her right foot was swollen and painful. One of the Employer's workers' compensation nurses spoke with Claimant at length on March 5, and referred her to Dr. Kerr, whom Claimant saw that day. The E/C invoked the 120-day rule, asserted causation and other defenses including entitlement to an evidentiary hearing before AHCA to resolve provider reimbursement issues, and continued paying Claimant's salary in lieu of paying temporary compensation benefits.

2

Dr. Kerr's notes reflect that on March 5, one day after the alleged foot puncture, Claimant already had an abscess on the foot, which was later confirmed to be a staph infection. Dr. Kerr's opinion was that such an infection takes more than one day to develop and could not have developed from the night before. Within four days, by March 9, the staph infection had grown worse. Dr. Kerr again advised Claimant that she did not think the infection came from the reported incident. She prepared a DWC-25 form requesting consult through the hospital emergency room for IV treatment. Claimant went to the emergency room on March 9. A podiatrist at the hospital operated on the abscess on March 11, delayed closure of the wound until March 15, and discharged Claimant on March 17. The hospital bill was just over $116,000.

The claims adjuster had spoken to Claimant on March 5, and concurred with the authorization of Dr. Kerr. The adjuster received Dr. Kerr's written referral to the hospital within ten days prior to denying the claim on March 17, but the adjuster did not authorize the hospitalization and did not find out about it until March 10. Neither the hospital nor the podiatrist notified the E/C or requested prior authorization for treatment. The E/C later asserted that the adjuster had determined on March 5 that the injury was not compensable, although the notice of denial as to compensability was not filed until March 17, the same day Claimant was discharged from the hospital. The notice of denial asserted that Claimant's injury was personal and not

3

causally connected to her employment, based on lack of evidence of causation and Dr. Kerr's office note regarding the presence of a well-developed infection only one day after the alleged accident.

## Pay And Investigate.

The "pay-and-investigate" rule of Subsection 440.20(4), Florida Statutes (2014), provides as follows (emphasis added):

> If the carrier is uncertain of its obligation to provide all benefits or compensation, the carrier shall immediately and in good faith commence investigation of the employee's entitlement to benefits under this chapter and shall admit or deny compensability within 120 days after the initial provision of compensation or benefits as required under subsection (2) or s. 440.192(8). Additionally, the carrier shall initiate payment and continue the provision of all benefits and compensation as if the claim had been accepted as compensable, without prejudice and without admitting liability. Upon commencement of payment as required under subsection (2) or s. 440.192(8), the carrier shall provide written notice to the employee that it has elected to pay the claim pending further investigation, and that it will advise the employee of claim acceptance or denial within 120 days. A carrier that fails to deny compensability within 120 days after the initial provision of benefits or payment of compensation as required under subsection (2) or s. 440.192(8) waives the right to deny compensability . . . .

The E/C had three options upon being notified of the claim: pay the claim, pay and investigate, or deny the claim. See Bynum Transp., Inc. v. Snyder, 765 So. 2d 752, 754 (Fla. 1st DCA 2000). A claimant's first authorized visit to a physician begins the 120-day period. Osceola Cty. Sch. Bd. v. Arace, 884 So. 2d 1003, 1005 (Fla. 1st DCA 2004). To accept or deny a claim, the E/C must "*advise* the employee

4

of claim acceptance or denial." <u>City of Ocoee v. Trimble</u>, 929 So. 2d 687, 690 (Fla. 1st DCA 2006). A merely internal intent or decision to deny a claim does not satisfy the requirement of advising the employee, and therefore the denial here occurred on March 17 when the E/C advised Claimant of the denial. We reverse the JCC's ruling to the contrary. Under subsection 440.20(4), the E/C were required to pay all benefits due "as if the claim had been accepted as compensable" until the date of denial.[*] However, the E/C retained the right to challenge other issues relevant to Claimant's entitlement to benefits, including major contributing cause. <u>Trimble</u>, 929 So. 2d at 689-90; <u>see also</u> <u>Sch. Dist. of Hillsborough Cty. v. Dickson</u>, 67 So. 3d 1080, 1083 (Fla. 1st DCA 2011) (holding section 440.20(4) does not preclude E/C from challenging claimant's entitlement to benefits on other grounds particularly including major contributing cause).

### Emergency Care.

The pay-and-investigate rule does not resolve this case, however. The E/C were entitled to an opportunity to give prior authorization for the care under at least two statutory provisions. First, a referral from one health care provider to another

---

[*] It should be noted that prior to October 1, 2003, subsection 440.20(4) permitted an E/C the option of paying some benefits while they investigated the claim. Effective that date, however, the subsection was amended to its current language mandating that the carrier "initiate payment and continue the provision of all benefits and compensation as if the claim had been accepted as compensable." Ch. 03-412, § 24, at 3934, Laws of Fla.

5

requires prior authorization under section 440.13(3)(c), Florida Statutes (2014).

Second, because the services provided to Claimant cost more than $1,000, the E/C

were entitled to a ten-day approval period under section 440.13(3)(i), Florida

Statutes (2014), and the emergency-care exception to that ten-day period. The E/C

are entitled to this approval period notwithstanding having elected to pay and

investigate. This section provides as follows (emphasis added):

> (i) Notwithstanding paragraph (d) [giving a carrier three days to respond to requests for treatment], a claim for specialist consultations, surgical operations, physiotherapeutic or occupational therapy procedures, X-ray examinations, or special diagnostic laboratory tests that cost more than $1,000 and other specialty services that the department identifies by rule is not valid and reimbursable unless the services have been expressly authorized by the carrier, unless the carrier has failed to respond within 10 days to a written request for authorization, or unless emergency care is required. The insurer shall authorize such consultation or procedure unless the health care provider or facility is not authorized, unless such treatment is not in accordance with practice parameters and protocols of treatment established in this chapter, or unless a judge of compensation claims has determined that the consultation or procedure is not medically necessary, not in accordance with the practice parameters and protocols of treatment established in this chapter, or otherwise not compensable under this chapter. Authorization of a treatment plan does not constitute express authorization for purposes of this section, except to the extent the carrier provides otherwise in its authorization procedures. This paragraph does not limit the carrier's obligation to identify and disallow overutilization or billing errors.

The ten-day approval period applies for services that cost more than $1,000 and other

designated specialty services, "unless emergency care is required." See also

§ 440.13(3)(b), Fla. Stat. (requiring emergency care providers to notify carrier by

the close of the third business day after rendering emergency care). No written request for authorization in compliance with the statute was made here, no emergency care notice was given, and the E/C did not expressly authorize the treatment. Further, the E/C's March 17 denial was within ten days of the date the adjuster testified she received the written referral from Dr. Kerr for the hospitalization. Unless the emergency care exception applied, as Claimant argues it does, the E/C are not liable for the hospital bill.

The JCC found that hospitalization was considered necessary to treat Claimant's infection, but these findings do not resolve whether it was "emergency care" within the meaning of section 440.13(3)(i). We have held previously that the emergency-care exception to the ten-day rule is triggered when the care is provided for a compensable injury, is medically necessary, and constitutes "emergency" care. Cespedes v. Yellow Transp., Inc., 130 So. 3d 243, 252 (Fla. 1st DCA 2013) (relying on section 395.002, Florida Statutes (2005), which defines "emergency services and care" and "emergency medical condition"). An emergency medical condition is defined as follows:

> (a) A medical condition manifesting itself by acute symptoms of sufficient severity, which may include severe pain, such that the absence of immediate medical attention could reasonably be expected to result in any of the following:
> 1. Serious jeopardy to patient health, including a pregnant woman or fetus.
> 2. Serious impairment to bodily functions.
> 3. Serious dysfunction of any bodily organ or part.

7

Cespedes, 130 So. 3d at 254 (quoting § 395.002(9)(a), Fla. Stat. (2005)).

The care here is considered compensable under the 120-day pay-and-investigate rule because the statute requires benefits to be provided during the investigatory period "as if the claim had been accepted as compensable." § 440.20(4), Fla. Stat. The JCC here did not, however, address the E/C's other defenses or the remainder of the analysis under Cespedes, including whether the hospitalization met the definition of "emergency services and care" under section 395.002 as referenced in section 440.13(1)(e). We remand for further proceedings on these issues.

### Conclusion.

We reverse the JCC's conclusion that the E/C's decision to deny the claim on March 5, not communicated to Claimant until March 17, was sufficient to avoid liability for the hospital bill. However, we remand for further proceedings on the E/C's other defenses and whether the treatment constituted emergency care.

REVERSED and REMANDED for further proceedings.

WETHERELL and MAKAR, JJ., concur.

8