# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D17-1283

_____

EDWARD PARADISE,

    Appellant,

    v.

NEPTUNE FISH MARKET/
RETAILFIRST INSURANCE
COMPANY,

    Appellees.

_____

On appeal from an order of the Judge of Compensation Claims.
Mary A. D'Ambrosio, Judge.

Date of Accident: August 22, 2015.

February 23, 2018

PER CURIAM.

In this workers' compensation case, Claimant challenges, on multiple grounds, the Judge of Compensation Claims' (JCC's) denial of his petitions for benefits (PFBs) based on a failure of proof as well as a successful affirmative defense of intoxication. Because we agree with Claimant that the Employer/Carrier (E/C) waived the right to contest compensability of his injuries under subsection 440.20(4), Florida Statutes (2015), we reverse and remand for entry of an order awarding the benefits claimed. Specifically, we find no competent substantial evidence that the E/C demonstrated

material facts, relevant to the issue of compensability, which they could not have discovered through a reasonable investigation during the 120-day pay-and-investigate period of the statute. As a result, we find it unnecessary to address the other issues raised by Claimant in this appeal.

## I.

The "standard of review in worker's compensation cases is whether competent substantial evidence *supports* the decision below, *not* whether it is possible to recite contradictory record evidence which supported the arguments rejected below." *Wintz v. Goodwill*, 898 So. 2d 1089, 1093 (Fla. 1st DCA 2005) (quoting *Mercy Hosp. v. Holmes*, 679 So. 2d 860, 860 (Fla. 1st DCA 1996)). *See also Ullman v. City of Tampa Parks Dep't*, 625 So. 2d 868, 873 (Fla. 1st DCA 1993) (holding factual findings are reviewed for competent substantial evidence).

Subsection 440.20(4) provides, in pertinent part:

> If the carrier is uncertain of its obligation to provide all benefits or compensation, the carrier shall immediately and in good faith commence investigation of the employee's entitlement to benefits under this chapter and shall admit or deny compensability within 120 days after the initial provision of compensation or benefits. . . . A carrier that fails to deny compensability within 120 days after the initial provision of benefits or payment of compensation . . . waives the right to deny compensability, unless the carrier can establish material facts relevant to the issue of compensability that it could not have discovered through reasonable investigation within the 120-day period.

This court has held that once the employer/carrier become aware of the need for medical benefits for a particular condition or injury, they have three options: pay, deny, or pay and investigate within 120 days in accordance with subsection 440.20(4). *See Mathis v. Broward Cty. School Bd.*, 224 So. 3d 852, 855 (Fla. 1st DCA 2017) (citing *Bynum Transp., Inc. v. Snyder*, 765 So. 2d 752, 754 (Fla. 1st DCA 2000)).

2

## II.

On August 22, 2015, Claimant, an employee at a fish market, fell on the right side of his body while emptying garbage in the outside dumpster. Claimant later testified that he slipped on a piece of fish. Mr. Sheafer, a co-worker, came to Claimant's aid and called an ambulance. Once the ambulance arrived, Claimant asked to be taken to the Veterans Administration (VA) Medical Center even though another hospital was closer. The owner of the fish market, Mr. Giamporcaro, was informed of the accident that day, but he never reported the accident to his workers' compensation insurance carrier.

At the VA Medical Center, Claimant was diagnosed with a fractured right hip and eventually underwent surgery. His recovery was complicated by repeated infections, including MRSA, and he ultimately had five surgeries with the last one resulting in removal of his right hip joint. He was hospitalized almost continuously from the date of the accident through November 2016.

On May 12, 2016, Claimant filed a PFB, which was the insurance carrier's first notice of the injury. The E/C elected to pay and investigate under the 120-day rule of subsection 440.20(4). As found by the JCC, the 120-day period for the investigation ran from May 25 through September 22, 2016. The E/C, however, did not file a notice denying compensability of the workplace injuries until December 14, 2016. In the notice of denial, the E/C asserted that, by operation of subsection 440.09(3), Florida Statutes (2015), no compensation was due because (according to the E/C) Claimant's injuries were primarily occasioned by intoxication. In the process of defending the claims, the E/C also challenged major contributing cause. Ultimately, the JCC ruled in the E/C's favor; but, before doing so, she first found that the E/C had not waived their right to deny compensability under subsection 440.20(4) because the E/C demonstrated material facts, relevant to the issue of compensability, which they could not have discovered during the 120-day period. Thus, under the standard of appellate review here, we are required to determine whether the record contains competent substantial evidence to support this finding. If not,

3

then the E/C waived the right to deny compensability under the 120-day rule and their defenses must fail.

III.

The E/C's investigation began May 25, 2016, when the assigned nurse case manager unsuccessfully tried to obtain Claimant's records from the VA Medical Center. On May 30th, the E/C's attorney sent a subpoena for medical records, but the VA responded about a month later that the records would not be released without a signed release from Claimant. The E/C's attorney immediately served Claimant with a request to produce to obtain a signed release (which did not yet exist) followed by a motion to compel. Claimant eventually provided the E/C's attorney with a CD of the VA medical records by July 6th[1] and a signed release form by July 27th. But, Claimant did not tick off the box on the release form that would allow the VA to provide information regarding alcoholism or alcohol abuse.

On August 17th, the E/C's attorney received medical records directly from the VA itself. During her deposition, the claims adjuster for the E/C identified a set of VA records with a print date of August 5th as the records she had received from their attorney on September 5th. These records, however, were redacted and, according to the adjuster's testimony, did not include lab reports or test results. On November 23rd, the E/C's attorney filed a motion to compel the VA to produce a complete set of the records. Although the JCC granted the motion to compel and the VA records custodian was deposed, the VA refused to produce an un-redacted version. The JCC denied the E/C's subsequent motion to compel Claimant to sign a full release. In the denial, the JCC stated that the E/C had not shown that the redacted information was "relevant or necessary to their defense" and that Claimant's "right to privacy outweigh[]the prejudice of production of the redacted records." The JCC also ruled that the records

---

[1] This version of the VA records, which was obviously received by the E/C long before the end of the 120-day period, is not clearly designated in the record on appeal.

4

authenticated by the VA records custodian would be the records used at the final hearing.

The E/C's investigation efforts also included attempts to depose Claimant on May 24th, August 19th, and September 21st, but Claimant resisted, citing his medical condition. Although the JCC granted a motion for protective order regarding the September 21st deposition, she also ordered Claimant to attend a deposition within 45 days. Eventually, the E/C deposed Claimant at the VA hospital on October 19th. During his deposition, Claimant admitted to a history of drinking every day, but denied he was intoxicated at the time of the accident.

Early in the investigation, the E/C contacted Mr. Giamporcaro, but he had no information to offer because he was out of the state at the time of the accident. No evidence was presented to show any contact with Mr. Sheafer until Mr. Giamporcaro testified on November 14th that Mr. Sheafer had just told him a week and a half earlier that he believed Claimant was intoxicated when he fell. The E/C did not depose Mr. Sheafer until January 2017 at which time Mr. Sheafer stated that, based on his personal knowledge and experience, he knew that Claimant drank on the job, was intoxicated on the day of the accident despite the fact that he was not seen drinking, and fell because he was intoxicated. During the 120-day period, the E/C did not seek to depose any doctors and did not designate an independent medical examiner.

IV.

In the order on appeal, the JCC recited the various factual circumstances here that hampered the E/C's investigation, including Claimant's refusal to provide a full release for the medical records and resistance to being deposed. But she did not clearly articulate the actual *material facts relevant to compensability that were not discoverable through reasonable investigation* within the 120-day period. For example, she did not address why, during the 120-day investigation period, it was reasonable for the E/C to (1) not contact Mr. Sheafer, given that he was a witness immediately before and after the accident; (2) not move to compel Claimant to attend a deposition at the hospital; or

(3) not move to compel the production of VA records or set the records custodian for deposition.

Ultimately, the JCC found that Claimant failed to present any admissible medical opinions to prove a compensable work-related injury. In reaching this finding, the JCC noted that the VA medical records, in contradiction to Claimant's testimony, indicated that Claimant fell because his knee gave way. Although the JCC concluded that Claimant failed to meet his burden of proof, she made no findings that would explain why the material facts relevant to this aspect of compensability could not be discovered through reasonable investigation within the 120-day period. After all, the E/C had the VA medical records describing the accident long before the 120-day period ended. And, although Claimant was not deposed until after the 120-day period, his contradictory testimony is not the basis of the JCC's finding of a failure of proof. Furthermore, as previously noted, the JCC made no finding that the E/C could not have compelled Claimant's deposition earlier. Finally, even assuming that material facts on this issue were not discoverable until Claimant's October 19, 2016, deposition, the JCC does not explain why it was reasonable for the E/C to wait to file their notice of denial (which asserted only an intoxication defense) until December 14, 2016.[2]

In the appealed order, the JCC stated that she felt obligated to address the intoxication issue. She subsequently concluded that the E/C had timely raised the intoxication defense on December 14, 2016, and had shown "by the greater weight of the evidence, through the VA Medical Center fact records, that the Claimant's injury was caused primarily by the use of alcohol." Significantly, she did not rely on any other evidence to find that the E/C had perfected their intoxication defense.[3] Furthermore, because a complete version of the VA records was never released, the JCC

---

[2] Nor is it clear why the E/C failed to raise a specific defense directed to this point in the October 20, 2016, pretrial stipulation.

[3] Notably, the E/C's attorney expressly described the VA medical records as "'critical' to the defense of this claim." The adjuster also testified that it was her understanding that the denial of the claim was based solely on the VA medical records.

necessarily relied upon the redacted records to reach this conclusion. Thus, it is irrelevant whether the E/C could not obtain the un-redacted VA medical records or reasonably discover other cumulative evidence from Claimant or Mr. Sheafer before the 120-day period expired. Because the JCC relied solely on redacted VA medical records to make the factual finding that Claimant's injury was primarily occasioned by intoxication, the E/C cannot be excused from timely denying compensability if the same material facts existed in the VA records that they had received on or before September 22, 2016.

V.

In the order, the JCC identified four specific reports demonstrating that Claimant was intoxicated on the date of the accident. One of these reports included blood alcohol test results from the day of the accident which stated that Claimant had an ETOH level of 128 where the normal range was described as "Neg – 10." The JCC's discussion of this report suggests that she accepted the adjuster's testimony that no lab reports or test results were contained in the set of the records she received on September 5th, but this is clearly not accurate: this report, as well as other records entitled "Lab Results," are attached to the adjuster's deposition. As an aside, it should be noted that the word "ETOH," which is redacted in the blood alcohol test report later produced by the VA records custodian, is *un-redacted* in the version the adjuster received on September 5th. With only one exception, the specific reports identified by the JCC are essentially the same and redacted in the same manner as those in the possession of the E/C before the end of the 120-day period. Even if this were not the case, we would be compelled to find material facts relevant to the issue of compensability in the other VA records attached to the adjuster's deposition which contain references to medication prescribed for "abstinence" and "to prevent DTs," symptoms of "ETOH withdrawal," and a diagnosis of alcoholism. The JCC herself described the records as "replete" with references to Claimant's substance abuse.

In short, the same "material facts" that the JCC identified as sufficient to perfect the intoxication defense were a part of the E/C's investigation file before the end of the 120-day period. Thus

7

there is no support for the JCC's finding that the E/C "reasonably and timely raised the intoxication defense on December 14, 2016, one day after taking the deposition of the Records Custodian at the VA." Significantly, the JCC did not make a finding that any specific report, *produced at that time*, established a new material fact in support of the intoxication defense. More importantly, it would not be possible to make this finding because the E/C evidently did not receive a copy of the records attached to the records custodian's deposition until *January 12, 2017*. In other words, the E/C did not show which material facts suddenly became available on or about December 14th which would explain the timing of their notice of denial.

Based on the foregoing, we find that the E/C waived their right to deny compensability of the workplace injury because they did not do so within the 120-day period as required by subsection 440.20(4).[4] We, therefore, REVERSE the order below and REMAND for entry of an order consistent with this opinion.

B.L. THOMAS, C.J., and WOLF and RAY, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

---

[4] Despite the outcome here, we do not condone the obstructionist tactics employed by Claimant during the investigation of this claim and we may well have reached a different result if the E/C had not actually received the relevant records within the 120-day period.

8

Christine M. Tomasello of Gordon & Doner, P.A., Palm Beach Gardens, for Appellant.

H. George Kagan of H. George Kagan, P.A., Gulf Stream, for Appellees.